Case number 24-1608 Enbridge Energy LP et al. v. Gretchen Whitmer et al. Oral arguments not to exceed 15 minutes per side. Mr. Bok, you may proceed for the appellant. Thank you. Good afternoon, Your Honors. Assistant Attorney General Dan Bok, on behalf of the appellants, and I'll note that I've requested to reserve five minutes of my time for rebuttal today. Your Honors, the District Court's July 5, 2024, opinion and order should be reversed, and this matter should be dismissed for three reasons. First, Enbridge's claims are barred by the 11th Amendment because they are the functional equivalent of an action to quiet title to state-owned submerged lands. Second, Enbridge's claims are barred by the 11th Amendment because they seek to compel a state to engage in specific performance of a contract. And third, even if Enbridge's claims were not barred, federal courts should abstain from adjudicating them while identical claims are litigated in state court. These three bases for dismissal are grounded in principles of state sovereignty and comity that underlie the 11th Amendment and ensure that the dignity afforded to states allows them to respond to claims against them in their own courts. As to the first point, whether Enbridge can seek a permanent injunction in federal court that would authorize it to permanently use and occupy state-owned submerged lands without regard for whether it has the state's permission to do so is addressed in the Supreme Court's decision in Idaho v. Coeur d'Alene Tribe of Idaho. There, the Supreme Court held that such claims cannot proceed in federal court because they properly lie against the state itself, not against any individual state officer, and thus they are barred by the 11th Amendment. Can you tell me, are you aware of any case applying the Coeur d'Alene exception to Ex parte Young where the plaintiffs are seeking essentially less than full ownership? Yes, Judge Bloom-Katz. In fact, we cited a number of them in our briefs, and I'll just refer the court to them here. For starters, in the case of Western Mohegan Tribe and Nation v. Orange County, the Second Circuit considered a case where a federally recognized Indian tribe had two competing or two separate claims against the state of New York. One was for ownership, but the other was for the right to use and occupy state-owned land. And the Second Circuit expressly held that the tribe sought, and I quote, a declaration from this court that New York's exercise of fee title remains subject to the tribe's rights under federal law. That's 395F3. So they divided out ownership versus use? I mean, the tribe there, as you just said, was seeking to fully own and possess that land. I think the other cases that you cite from the Fifth and the Ninth Circuit also, they're saying full title rests with them or that they're the fee simple owners. We don't have that here as far as I can tell. Well, Your Honor, we also cited a number of district court cases. So Hood Canal Sand and Gravel, a Western District of Washington case where Coeur d'Alene was relied on to bar claims brought under ex parte Young that would have prevented or enjoined Washington officials from enforcing the state's rights to easements to state-owned submerged lands. Well, but the action here is to claim that the state is violating the Supremacy Clause, the state is violating the Interstate Commerce Clause, and the Foreign Commerce Clause of the U.S. Constitution. So isn't that different than when you have an entity such as Enbridge or a tribe claiming to own the land of the state, which was involved in Coeur d'Alene? It is not different, Your Honor, for two reasons. So first and foremost, the language of Coeur d'Alene provides for suits that are the functional equivalent of an action to quiet title. And if I can just quickly mention— Well, I mean, just to finish that sentence, to quiet title in that substantially all benefits of ownership and control would shift from the state to the tribe. Yes, Your Honor. It sounds like the whole—I don't mean to take over your question. No, please go ahead. It sounds like they're talking about quiet title as to the whole bundle of property rights and not just one stick. And this looks like more like one stick. Well, Your Honor, I would note I believe it's more than one stick here because what Enbridge is seeking is the right to permanently maintain a structure on state-owned land. One stick that they would permanently maintain. I want to make sure you do answer Judge Moore's question. I didn't mean to interrupt that. Certainly, Your Honor. And to respond to Judge Moore, I would also note the District Court of Alaska in Frankie v. Boyle. We cited that case. That was another easement case. The Northern District of Indiana, Pavlok v. Holcomb, was another easement case. Western District of Washington, the case of Lighthouse, Rez, Inc. v. Inslee was a case about leases to state-owned land. And even this Court's decision in McDonald v. Village of Northport was an attempt to extinguish a state-held easement over upland that provided access to the Great Lakes. And that was held to be barred by Coeur d'Alene. And so we have numerous instances of federal courts, including this circuit, applying Coeur d'Alene to bar actions over disputes that were not about complete title or fee simple title, but were about easement rights, the ability to lease, and another one about enforcing property boundaries. Now, I'll also note, we've cited cases under Michigan law because when a quiet title action is brought in federal court, one applies state law unless it's against the federal government. We cited the case Adams v. Adams, which is a Michigan state case, that says an action to quiet title is not merely one for fee simple. It's an action asserting title, an interest in, or the right to use the property of another. We've cited other Michigan cases, Matthews v. DNR, and the Marlette Auto Wash case that held that claims in Counsel, but to go back to Judge Kessler's reading from Coeur d'Alene, it's not just about any quiet title action, right, in what Michigan might consider a proper quiet title action. It's a quiet title action that is looking to take, you know, a lot more of the ownership. But, Your Honor, what I would say, the right to permanently maintain a structure on someone else's property without regard for permission or operation of state law effectively does take away all rights of ownership from that piece of property. I mean, well, go ahead. Is that exactly what Enbridge is seeking here, or aren't they seeking a declaration and an injunction that what Michigan is trying to do is violating these three U.S. constitutional principles, which is different than saying we want an order saying we can do whatever we want with this property? That's how Enbridge has framed its complaint, Your Honor. Well, and I'm asking the question, isn't that correct? In effect, no, it is not. If the court imagines a situation where one neighbor builds a house on another neighbor's property and when that neighbor tells them your house is on my property illegally, you have to move it, and they assert a right, a legal right, to have it there in perpetuity without permission, that is obviously a quiet title action. And that's exactly what has happened here. Enbridge has a four-mile long pipeline on Great Lakes submerged lands. The Michigan officials issued a notice saying that pipeline is here illegally. We're rejecting it. Seventy years later, they come forward with an omission. That's a question of the merits, Your Honor. That would seem to be a serious question. Certainly, Your Honor. But the point is Enbridge is asserting that the Michigan officials do not have the right to reject someone they view as a trespasser from state land. That is the functional equivalent of a quiet title action. Sorry. Okay, I'll make it quick. I mean, is it Michigan's position that the state has been functionally without any ownership of the Straits of Mackinac for the last 70 years in the area we're talking about here? Well, Your Honor, it's Michigan's position that when the state of Michigan orders someone it views as a trespasser to vacate, and that person asserts a right to remain on state land in perpetuity, that is the functional equivalent of a quiet title action. And so since the notice was issued I mean, the right that they want to exercise going forward, the easement, is the same one they've been exercising for 70 years. And if that's enough to amount to stripping the state of functionally all title, I guess my question is, is it the state's position that the state has been functionally without title to the Straits of Mackinac for the last 70 years? No, I think, Your Honor, the claim, the functional equivalent of a quiet title claim that Enbridge raised was this lawsuit in response to the state's notice to vacate. Until the state notified them that they didn't have a valid easement and they needed to get out, it wasn't an issue. Okay. Now, I'll also note, well, yeah. I think Judge Lombkatz had a question. Well, I was just curious if Michigan had a position on whether they could sell any part of the land subject to the easement. They could not, Your Honor. That's an interesting thing that Enbridge in their brief argued that it does not assert the exclusive right to use these lands. But the fact of the matter is, for all practical purposes, they do because there's an oil pipeline there, and so those lands But, like, could you, I mean, people sell property subject to easements, whether they're public easements or other easements, could, I mean, do you, I mean, this dovetails, I think, a little bit with Judge Kessler's question about do you effectively not have title? Do you even have title that could be sold subject to the encumbrance? There, Your Honor, I don't think Michigan's arguing that we've lost every single stick in the bundle. I think we've argued that a quiet title action does not require that every stick in the bundle be lost. And I think the most significant sticks are the right to exclude, the right to eject trespassers, and the right to control what happens on one's own land. And certainly the right to not have a structure that you view as their illegally on your property is one of the sticks in the bundle. Now, I'm close to the end of my time, but I want to briefly touch on two other things, Your Honors. First and foremost, it's important to note there's a second reason Enbridge's claims are barred by the 11th Amendment, which is that they seek to compel Michigan's specific performance of a contract. Now, the case at issue here, Enbridge seeks a permanent injunction forbidding the state as grantor of an easement from revoking or terminating that easement. I'll note that the easement contract at issue was entered into by the State of Michigan, not any individual state official. It concerns land owned by the State of Michigan, and the right to terminate the easement expressed in the easement's terms is held by the State of Michigan itself. Enbridge seeks a permanent injunction requiring the state to continue to perform its obligations under the contract, but argues that that is not specific performance. It clearly is. There's just a mismatch between the conduct that they say violates Federal law here and the conduct that you say is performance of the contract. I mean, as I understand Enbridge's claim here, they're saying that the governor's conduct in purporting to revoke the easement and the state's, I guess, attempted conduct in trying to regulate this pipeline under state law are themselves contrary to Federal law. And the point, I mean, it would seem to me that if a state actor is violating Federal law, she doesn't get to keep doing it just because her conduct also violates a contract. Like, you know, the fact that you would enjoin action that comports with the contract is just incidental to remedying the Federal harm, and so it's not like you're ordering specific performance per se. That's my concern about this point you make. And two quick points in response, Your Honor. So first and foremost, we've noted in our briefs, but the Supreme Court has said repeatedly that courts have to look past the way the plaintiff has styled their complaint because it's a given that plaintiffs will attempt to invoke. But this is hardly, you know, kind of a phony way to present their claim. I mean, you know. But, Your Honor, I will note. It's part of the Federal issue. Well, it's interesting, Judge Kaplitz, thank you. You referred a moment ago to enjoining action that violates state law that also has the incidental impact of requiring this. Federal law. Federal law, I apologize, that has the incidental impact of requiring the state to continue performing under a contract. But in this case, it's different than the Redwine case in that there's nothing incidental about the relationship between Enbridge's lawsuit and the contract. The only action the Michigan officials took in this case was issuing a notice saying that the State of Michigan was terminating and revoking the contract, in part pursuant to its terms, which the contract gives it the right to do. There is no incidental relationship. The termination of the contract is the very nub of the injunction that Enbridge seeks. And so the question before the Court is a simple one. If one party to a contract says, I'm terminating this contract, and the other party says, I'm seeking an injunction that prevents you from terminating it and requires you to perform your obligations under it in perpetuity, how is that? There is no scenario in which there's not a claim for specific performance. Now, very quickly, I apologize. Your time is up, but Judge Blumkatz has a question. And maybe going where you're going, I just had one question on Younger, given that your time is up, and I'd be curious your response to Enbridge's argument that we don't have jurisdiction on interlocutory review to review the Younger issue. That's not correct, Your Honor. So the thing about this case, Enbridge cited the Summers case, which says that when a district court denies a motion to abstain and there's an interlocutory appeal under the collateral order doctrine on other issues, the court lacks jurisdiction on that basis under the collateral order doctrine to consider a denial of a motion to abstain. Here, there was no motion to abstain, nor could there have been, because this court remanded the parallel case of Nestle v. Enbridge, ordered it remanded in June of last year. But Enbridge sought a petition for en banc rehearing, which was not denied until late August, nearly two months after the issuance of the decision that gave rise to this appeal. And the mandate issued at the very end of August, and the matter was actually remanded to state court in September, approximately a month and a half after the deadline to file this appeal passed. And so there was no decision of the district court on whether to abstain or not, from which this court would assert appellate jurisdiction. Didn't you ask the district court not to reach the younger question in your letter? So, Your Honor, we filed a letter informing the district court that this court had ordered Nestle v. Enbridge remanded to state court and that we intended to raise abstention as a basis. However, the matter was still in this court, and the district court had no jurisdiction over it while the appeal was pending until the end of August, nearly two months after it denied this motion, brought by the state officials, and approximately a month after this appeal was filed, which, when the appeal was filed, interlocutory appeal divested the district court of jurisdiction. So we notified the district court we intend to raise this issue, but we never had the opportunity because they're under the middle sex factors that are required for younger to apply. Factor number one is that there has to be an ongoing state court proceeding at the time abstention is sought. And there was no state court proceeding until September, more than a month, month and a half approximately, after this appeal was filed. And so the question is not whether this court can assert appellate jurisdiction over some decision of the district court based on the collateral order doctrine. The question is whether this court can raise the issue of younger abstention sua sponte. And we've cited cases in our supplemental brief filed yesterday, the Rohr gas case, O'Neill v. Coughlin, which say, published opinions that say, yes, this court can raise abstention sua sponte. Were any of those cases where we were here on interlocutory jurisdiction? No, Your Honor. We have not been able to find any case in this unusual fact pattern where there was an interlocutory appeal where abstention could not have been raised. But what those cases say is that when a case is on appeal to this court and abstention was not waived, which it absolutely was not waived in this case, this court has the authority to raise it sua sponte. We don't have plenary jurisdiction in this appeal is the difference. But anyway. Should we, on that track, simply say that that's something for the district court to consider if we remand? The court could do two different things, Your Honor. The court could simply exercise its discretion to abstain from deciding this case or it could argue that order sua sponte, that abstention is proper and that the case be dismissed pending resolution of the state court case. Or the court certainly could remand with an instruction to the district court. Thank you. Thank you. Good afternoon, Your Honors. Mark Savignac on behalf of Enbridge. I'll start quickly with Younger since it's the last thing you discussed. I think it's quite clear that the court does not have jurisdiction in this interlocutory appeal to consider Younger. Mr. Bach's argument seemed to say that, well, this court wouldn't have jurisdiction if he had argued Younger below and the district judge had issued an order rejecting Younger abstention, but that the court somehow has more jurisdiction over the issue because it's never been pressed or considered below. That's sort of the opposite of how a court of appeals works. As for the notion that a court of appeals has discretion to raise things sua sponte, surely that's referring to things that are within the court's appellate jurisdiction. It's not an exception to appellate jurisdiction. Again, appellate jurisdiction is not broader when an issue is not presented below. If there's a remand, it remains to be seen on what. Should we leave it to the district court in the first instance to decide whether or not Younger abstention is appropriate? Yes, I think that it's solely before the district court, and I would expect the district court to consider our argument that the state officials have forfeited Younger abstention, but that would all be for the district court in the first instance. None of it's really here today. To move to the issues that are on interlocutory appeal, we brought this suit against the governor to protect our federal rights by enjoining state officials from forcing a pipeline shutdown in violation of federal laws, including the express preemption clause of the Federal Pipeline Safety Act, which prohibits states from enforcing pipeline safety standards, and the U.S.-Canada Treaty governing cross-border pipelines, which expressly prohibits a public authority in the jurisdiction of either of those nations from impeding or interfering with pipelines, including this pipeline. Are these issues present in the suit that is pending in the state court currently that was brought by the state against you? In a sense, they are. So in state court is the Michigan Attorney General's lawsuit asking the state court, in that case, to find that the law requires Enbridge to shut down the state's pipeline. State law.  Correct. State statute. Nuisance and the like. Raised as affirmative defenses, that doing so would violate these three federal constitutional provisions. Yes, absolutely. But I do want to clarify. So the federal issues are the same legal issues in both cases, but this case was brought in response to the governor's shutdown order, which is a separate state action by a separate state actor telling us that we have to shut down the pipeline. It's separate from the order that the attorney general is seeking in that other case. So I'm just saying naturally we had to respond to the governor's order, and because it violates federal law, we did that by bringing a federal lawsuit. I mean, that's an independent ground by which you could be prevented from operating the pipeline. Yes, exactly. Totally independent of the state nuisance theory, et cetera. And our legal counterarguments, to the extent that they rely on federal law, are the same arguments, but it's a different. The governor is not a party to the Nessel suit, right? That's correct. And so you can't get an ex parte young injunction to protect your interests as to the revocation order in that case as it's currently postured. That's correct. The state court case, which is Nessel against Enbridge, as it's currently postured, is not a way for us to get an injunction prohibiting the governor from trying to enforce this separate order. How about Mr. Bach's argument about the contract issue, that the injunction here, I mean, her action in violation of federal law is basically trying to end the contract, and so you'd be ordering specific performance. What's your response to that? Well, I think that what you said is quite right, which is that if an official wants to violate federal law and a plaintiff is seeking an injunction, the official can't say, oh, I have sovereign immunity, because the act that I want to do that would violate federal law would also violate a contract. But more generally, I would say this case is not distinguishable from the Redwine case, which is the binding and most recent Supreme Court precedent in which distinguishes the 1880s cases that the state relies on. If anything, Redwine is closer to specific performance than this case, because in Redwine, the federal constitutional claim was we have this contract right, and under the contracts clause of the Constitution, federal law prohibits the state from taxing us in violation of the contract right. Whereas in our case, it's, you know, federal law prohibits the state from shutting us down based on state law safety standards, which are preempted by federal law, or federal law prohibits them from shutting us down because the federal treaty with Canada prohibits any public authority in the United States from doing that. So if anything, this is an easier case than Redwine, but I certainly don't see how you can look at Redwine and then go the other way in this case. And they rely, of course, on the Third Circuit case. The Third Circuit didn't look at Redwine. The parties there, unfortunately, failed to brief that case and bring it to their attention until their cert petition, which was too late. With these two different lawsuits, one in state court, one in federal court, is there the possibility of the first to decide having issue preclusion or claim preclusion over the second litigation? I haven't briefed that here, but I certainly believe so. Yeah. I was going to take us in a different direction. Well, no, go ahead. If I can turn to Coeur d'Alene for a second.  One of the things that we know from Coeur d'Alene and from some of the cases afterwards, the VOPA case and stuff, is that we're looking at, like, the effect, right? Not just the formal, are you asking for fee simple or something like that. We're looking at the effect. It strikes me here that the injunction that Enbridge has asked for is extraordinarily broad. I mean, you're asking for that Michigan cannot take any steps to impede or prevent the operation of the pipeline. I mean, arguably, you know, can they, you know, can they haul someone off to jail who operates the pipeline if they commit a criminal act that might impede the operation of the pipeline? I mean, and so I'm curious how you square the breadth of the injunction that's been asked for here with essentially leaving enough room for state sovereignty and state regulation such that Coeur d'Alene wouldn't apply. Sure. So the scope of the injunction, effectively, we're asking for an injunction telling them not to violate federal law. So the scope of the injunction comes from the scope of the underlying federal law. The treaty with Canada does say no public authority. I think it uses the word impede in related terms. But if that's what you're asking for, you know, if it is what the scope of federal law gives you, if you say that, or what the treaty gives you, you're still asking for essentially, you know, a full, you know, taking all the power over the area of the pipeline, right? And then don't we have a Coeur d'Alene problem in effect? So I just wanted to say, I mean, I don't have any reason to believe that the treaty would be interpreted to prevent a criminal enforcement action against someone who committed an actual crime where it might incidentally have an effect on, you know, he needs to get to his job working on the pipeline, but he's pulled over by the police. I don't think it would be interpreted that probably. So what rights does Michigan still have over this land? Sure. So Michigan owns the land. Michigan can regulate the land subject to the federal restrictions, which are not at all complete restrictions. They restrict Michigan's ability to try to shut down the pipeline, to try to stop it from operating, or to try to impose its own regime of safety standards on top of the federal standards that are administered by the federal agency. That sounds like they don't have any power. Since those are the things they want to do, all they really care about is shutting down this pipeline, and they can't do the thing they want to do. They impose safety standards because they're worried about the state of Mackinac getting oil pollution or other dangerous things happening there. Yeah, I don't see that as what the – so this is – in many cases in joint states from violating federal law, this is hardly the broadest injunction that anyone has ever received from a federal court. It's not like Coeur d'Alene. It is not seeking substantially all benefits of ownership and control. If they wanted to say, you know, we like the color green, the pipeline is orange, you have to paint it green, that's not a safety standard. I don't understand your example, but Michigan has granted an easement to your company or its predecessor to have this pipeline. So vis-a-vis the easement, if federal law says they can't do anything, they have no rights whatsoever, correct? You were telling us that Michigan still retains some rights, and I'm trying to figure out what exactly. The easement gives Enbridge certain limited rights to do things, basically to operate this pipeline. It's true that federal law prohibits them from taking that right away, but it is just an easement to move these products over their land, just like any other easement. It doesn't mean that we own the land. It's just the same that if, you know, if I have an easement as a member of the public to walk across the side of your beach house to get down to the lake, you can't stop me from doing that, but you're still the owner of the land. It's not substantially all the benefits of ownership and control. If Enbridge decided tomorrow, you know, we want to build, like, an underground train tunnel where we have the easement because we think we could make more money transporting people than transporting energy resources, like, you know, they couldn't do that. They don't own the land, and it's certainly not like in Coeur d'Alene where the tribe wanted to say that the state couldn't even regulate on that land because it was effectively part of a tribal reservation. Sorry for this background question, but the easement is for the land under the Strait of Mackinac. Is that right? The easement is to operate a pipeline. It's, you know, a small pipeline across this land. Under the, on top of the bottom of the Strait, or under the bottom of the Strait, or how far down does it go? It's generally speaking, I believe, on the submerged land. So it's not necessarily underground. So the easement then would not prohibit the State of Michigan from allowing a train to go underneath in that particular location, correct? Correct. So, I mean, that's a good way of looking at it. Enbridge's use is not prejudicing anyone else's use of these natural resources. Anyone else is able to use the Straits for all purposes, commerce, fishing, kayaking. There are other utilities that also run along the bottom lands. Right. They're not in their way. In the easement area? I don't know if they are physically. Easement. As I understand it, it is exclusive only in the narrow sense that, you know, no one is allowed to, like, break through the pipeline. But, you know, pipelines go all over this country. If you have a road or a railroad, like one goes over the other one, there aren't problems there. And there's no argument that anyone wants to do anything in the Straits that they are unable to do because of the physical presence of this user. Where is it relative to the bridge? You're heading north. I don't know. You don't know? I wish I knew. Okay. I mean, just to make it a little more concrete. I mean, we have ferries. We have fishing boats. We have...  I don't know if there's, like, some other stuff going on underwater, really. Probably not. Any vessel that passes through the Straits, as I understand it, would be passing under the bridge and over the pipeline and the other utilities that are... Bridge is way up. Right. Bridge is way up, and these things are way down. Right. It's still, though, like, where the pipeline is. And obviously, as you said, you can't break through it or things. Like, you know, I'm still struggling a little bit to see what sovereignty the State still has where the pipeline is. I mean, I actually gave my law clerks the color example. So, like, you know, could they, you know, make them paint them red? Like, what power does the State still have? And it might not be over the things that they want, like, you know, safety issues and things like that, if your preemption argument is correct. But for Coeur d'Alene purposes, we're trying to think about the effect of what you're asking for and whether it still leaves sovereignty, you know, to the State over this area. Well, I mean, like, one hypo just would be zebra mussels or quagga mussels, which are the deeper of the two. You know, they're an invasive species in the Great Lakes. They actually like to attach to structures. If the State said, you know, we have a program where we're trying to eliminate some of these things and they were going to take some action, whether it's a chemical, probably not, but, you know, something that is trying to remove the mussels from the pipeline, would they be able to do that? I don't have any reason to think they wouldn't. Certainly the injunction we're asking for in this case wouldn't prevent them. And that's a better example than the painting because it's less fanciful. I bet they're all over that thing. I bet you. The mussels? They can get right on any structure. Yeah. I mean, the pipeline is not doing much. It's just a small pipeline that's sitting there and these products run through it. So it can be difficult to come up with ideas of, well, what could the State do? Similarly, if I walk across your beachfront land to get to the lake, well, what can you do to, like, the small part of your land that my body is in? Yes, but arguably the owners can also walk across that land. It could be an exclusive easement. The owners can also walk across that land. I guess it could be an exclusive easement. But they can't. So is this an exclusive easement? Their bodies can't be right where I am. I don't believe that it's not excluding anyone in any meaningful sense. Like a utility right away. Correct. That just happens to be in the air, right? There could be a bunch of them. And there's nothing that you can't remove. That part, you know, where the wires are in the air, there's nothing you can do as the owner. But you still own the property. Yeah. Similarly, there could be another pipeline that could be dug or a train tunnel that could be dug under your pipeline or placed over your pipeline if the easement is just limited to that certain physical area, if that's the case. Yeah, I don't doubt that at all. Or it could be, you know, five feet to the side of it. As I say, there are other utilities running along there. Can you say Michigan can sell this land subject to the easement? I don't see why they wouldn't be able to sell it subject to the easement. I think they would say, you know, legally they can't alienate these submerged lands. But the easement's not preventing it. The easement's not preventing it. Your red light's on. Thank you. Yes, thank you. Your Honors, I'll be very brief, acknowledging that I went a little over my time earlier. I just want to make three quick points. First, Your Honors, with regard to Coeur d'Alene, a couple things I want to address to the Court's attention. First and foremost, Coeur d'Alene, the decision that was made by the Supreme Court, did not involve the tribe's claim to title to Lake Coeur d'Alene. That was raised in the District Court along with its Ex parte Young claims for injunctive relief. And those claims were that they sought an injunction under Ex parte Young to prevent state officials from exercising the state's rights of ownership and sovereign authority over the lake bed and the lake itself because they were preempted by federal law. The District Court granted the state's motion to dismiss as to both title and Ex parte Young. The Ninth Circuit affirmed the dismissal of the tribe's title claims, but reversed as to Ex parte Young. The only issue before the Supreme Court was not whether the tribe could claim fee simple title or challenge the state's title, but whether the tribe could get an injunction under Ex parte Young that would prevent state officials from taking actions in furtherance of the state's title rights. That's exactly what Enbridge seeks here. So I want to make that important distinction. We also noted, as I said, we noted numerous cases in our briefs where Ex parte Young was applied to disputes over easements, leases, and possessory rights by multiple different federal courts, including this court, McDonald v. Village of Northport. It was an easement dispute. The District Court distinguished it, puzzlingly saying it was a plurality decision of this court. It was actually a two-to-one binding published majority decision about an effort to extinguish a state easement. And I will note we cited two cases from the Fifth Circuit, as well as Justice O'Connor's concurrence in Coeur d'Alene, that Justice O'Connor said when you're talking about submerged bottomlands, because they have a special relationship to state sovereignty, there is no meaningful distinction between possession and ownership, even though there could be with other forms of land. And we cited two Fifth Circuit cases. It was the Ileta del Sur Pueblo case and the Locano Investments case that point out that the law, black-letter law, has been clear for a very long time that you can't maintain a quiet title action against the state in federal court, any form of quiet title. And the Fifth Circuit in those two cases said federal courts cannot adjudicate the limits of state property ownership. They did not say they can't only refrain from deciding a quiet title when it involves complete fee simple. The teaching of Coeur d'Alene, or the central holding of Coeur d'Alene, is that not only can you not bring a quiet title action against the state in federal court, you have to bring that in state court, but you can't essentially bring the functional equivalent of a quiet title action in state court. And that's exactly what Enbridge has done here. It's an action to quiet title to an easement, a permanent easement, over state land. And that has to be brought in state court under the Eleventh Amendment. I'll note just on the kind of... What about the treaty, you know? I mean, the treaty says that no public official can impede these pipelines, and so yet the governor has plenary authority to revoke operation of the, you know, the right to operate the pipeline? Well, Your Honor, I wish to clarify, in our briefs we were careful not to wade into the merits of the easement dispute, but since Enbridge has raised them, I'll point out, the 1977 treaty expressly preserves the right of appropriate government officials to bring actions for environmental protection and to enforce nondiscriminatory laws and contract terms. So you would have, like, the Michigan Court of Appeals then construing the treaty as well as the Pipeline Safety Act? Indeed, Your Honor, and that's my third point. The exact issues raised by Enbridge in its complaint here, exact, are all currently before the Michigan State Court. They were argued, we argued dispositive motions on January 27th in Nessel v. Enbridge. Well, in Sprint Communications, the court said abstention is not in order simply because a pending state court proceeding involves the same subject matter. That was the Supreme Court in 2013 applying Younger. But, Your Honor, and we've set forth in our supplemental brief yesterday, this case is precisely the kind of case for which Younger abstention exists. There is an ongoing state court civil enforcement action, which is akin to a criminal prosecution because it involves a public nuisance claim, which the Supreme Court recognized is subject to Younger in Huffman v. Pursue, which is the path-marking case on the issue, and it involves claims for enforcement of Michigan's Natural Resources and Environmental Protection Act, which this court held on December 12th, just a couple months ago, in Sokoviac v. McLean, is the type of case that's subject to Younger. But the federal plaintiff must be able to fully defend its federal rights in the state proceeding, and here the injunction, here they're just trying not to be themselves enjoined, Enbridge, by a state court. In order to defend their federal rights as they see them, they must be able to enjoin Governor Whitmer, who is not a party, and her revocation order is, like I said earlier, just an independent basis that would prevent them from operating this. So how are they able to fully, you know, ensure their right to operate this thing in the state proceeding? It's just not, you know, it doesn't have that scope. Respectfully honored. It has exactly that scope, and this gets back to, I apologize, I forget if it was Judge Moore or Judge Blomkatz's request or question earlier about claim preclusion. Now, thank you, Judge Moore. Literally, these are two cases that Enbridge itself has described as virtually identical, involving identical legal issues and the same parties or their privies. Why did Governor Whitmer then bring that second suit, if the Attorney General's suit was sufficient to adjudicate everybody's rights in this dispute? Certainly, Your Honor. So the Attorney General filed suit in June of 2019. Real quick, because I don't want to go beyond. The Governor had the DNR conduct an investigation into whether there were, what other easements Enbridge had and whether there were breaches of other Line 5 easements. When that was conducted, when that was complete, the Governor brought, issued this notice and brought a similar lawsuit in state court with the expectation that it would be consolidated with the Attorney General's case. So why bother with the other suit? That's the bottom line and we're in the red. Simply because it also, the State of Michigan was the party to the contract, and so that was brought forth by the Governor. But again, these are issues that Enbridge has described as identical. So I'm really confused. One in state court that started in 2019 was Nessel, the Attorney General, versus Enbridge. So why was Whitmer not involved in that lawsuit? The Governor wanted to complete a review of the easement and other Line 5 easements Enbridge had before issuing her notice, because it involved breach of contract claims, which the Attorney General's case did not. And Whitmer can, under Michigan law, Whitmer can bring her own action as Governor versus Nessel, who's the Attorney General. Both of them are high up state officials? Yes, Your Honor. The Attorney General and Governor under Michigan's Constitution are separately elected constitutional officers with different authorities. But the point is here. So a decision in the Nessel case in state court would not be binding on Whitmer in the Federal? It absolutely would, Your Honor. The issues would have the effect of claim preclusion res judicata, because they would have been, because not only has Enbridge had the opportunity to raise all of its Federal claims in that case, it literally has raised all of them as preemption defenses. And what's happened here is. So you're saying that a decision adverse to Enbridge would be binding on Enbridge in the second case involving Governor Whitmer? But additionally, if the issue was already adjudicated in state court and held that Enbridge is, say the Attorney General loses her case, and the state court holds that Enbridge has a valid easement, then that would be a determination on the merits that the basis for the Governor's notice are incorrect. And I will note, she's not a party. But doesn't she have a breach of contract claim where you were telling me that the Attorney General has like public trials, public nuisance, and the Michigan EPA claims? Like if Michigan were to prevail, or let's say, let me try that again. If Enbridge were to prevail in the state proceeding in the Nessel case, right, and they hadn't violated public nuisance laws, they hadn't violated the public trust, they hadn't violated the Michigan EPA, whatever else claims are there, could Whitmer still be saying, well, you violated the terms of the easement itself, and so the revocation order is still, like I'm still pursuing it? Like because it sounds like it has a different basis. So, Your Honor, that would be the one thing that the state could still advance would be the breach of contract. But I will note two quick points. Number one, the basis for revocation of the contract in the Governor's notice were the exact same as the counts of the Attorney General's complaint. And the only additional thing was the argument that Enbridge had breached the terms of the contract. Now, what I'll note, too, is that. That's a big thing. But, Your Honor. To prevent them from operating the pipeline. But the Governor and the DNR Director have withdrawn their lawsuit to enforce the notice. They withdrew it in 2021 because Enbridge removed that case to federal court and attempted to remove the Nessel case. Now, last June, this court remanded. You're saying they should just violate the notice then? No, Your Honor. I'm saying there's no current action pending against them for breach of contract. They've been notified that the state believes that they breached the contract. But the Governor and DNR Director withdrew that suit. And the Governor expressly said, and we put this in our briefs, that the suit was withdrawn to allow the Attorney General's case to go forward without a forum battle or a race to judgment. And what Enbridge has done here is sue other state officials, asserting as counts of their complaint, the exact same preemption defenses. Which itself doesn't matter under Sprint. And these other officials are ones who independently are trying to strip them of their ability to operate. So the idea that, you know, that this all has to be consolidated in a suit that does not concern that other official, it's hard to square with Ex parte Young. Well, Your Honor, I'm not saying they all have to be consolidated. I'm saying that under Ex parte Young, when you have an ongoing state. Well, and I'll note that under Ex parte Young, there is no requirement that it be the exact same state actor that has the state court proceeding. I've already, you've answered my question. There are two different people making two different runs on two different grounds. And, you know. I'll just note, Your Honor, I believe one of the purposes of abstention is to prevent the state court defendant from suing other state actors under identical claims. Seeking essentially to preclude the claims that are being brought in state court and create this forum battle or this race to judgment. Thank you, Your Honor. Thank you all for your argument. The case will be submitted.